UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA                    CRIMINAL NO. 04-10342-NG

V.

GARY ADAMS

## DEFENDANT GARY ADAMS' MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPRESS EVIDENCE OBTAINED AS A RESULT OF ILLEGAL SEARCH AND STATEMENTS ALLEGEDLY MADE IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS

The defendant, Gary Adams, respectfully moves that this Honorable Court

suppress from evidence a firearm and ammunition allegedly seized as a result of a

warrantless search of an automobile registered to his father Gary Adams senior on

August 13, 2004 as well as statements allegedly made by the defendant as a result of the

illegal search and seizure. As grounds for this motion the defendant asserts that the

evidence was seized in violation of his rights under the Fourth Amendment of the

Constitution and the statements attributed to him by the police were the result of coercion

by the police in violation of his rights under the Fifth Amendment of the Constitution and

Miranda v. Arizona, 384 U.S. 436.

On August 13, 2004 at approximately 8:00 p.m. members of the Boston Police

while conducting "Operation Neighborhood Shield" were dispatched to the intersection

of Corbett and Hopkins sts. In the Dorchester section of Boston as a result of an

anonymous call that a group of young men were dealing drugs in the area. The defendant along with several other young men and women were in the area when the police arrived.

The only description the police had was that the men were wearing white T-shirts and hats on backwards. The police allege that "several of the men present matched this description". The police exited their unmarked cruiser and approach the group and immediately begin pat frisking the males despite the fact that none of these men were engaged in any illegal activity. Within a very short time seven more police officers arrive and they begin searching the area. During the course of this search the police open the driver's side door of the defendant's automobile and began to search the interior. The automobile was parked, there were no occupants and the engine was not running. As a result of this search a firearm was allegedly recovered from under the front seat. Officers ran the automobile's license plate and learned that it was registered to Gary Adams Sr. a fellow Boston Police Officer. The police then ask the group of men who owns the automobile and allegedly no one responds. Gary Adams is then placed under arrest for drinking an alcoholic beverage in public and allegedly read his Miranda rights. The police then begin to interrogate the defendant about the automobile. The police allegedly ask Mr. Adams if the automobile is his and he acknowledges it is his. He is further asked if there is anything illegal in the automobile which the police allege he replied "yes". The police further allege that they asked Mr. Adams if there was "a permit for same" to which Mr. Adams is alleged to have replied "naw there's not". Mr. Adams then asks the officers what would happen to his father if no one took responsibility for the gun to which the police reply that the matter would be reported to their patrol supervisor and then referred to the courts. Mr. Adams response to this obvious danger to his father is to claim ownership of the firearm, "the gun is mine leave my father out of it". Upon further search

of the automobile the police allegedly recover some marijuana.

## ARGUMENT

### 1. THE POLICE LACKED REASONABLE SUSPICION TO CONDUCT THIS INVESTAGOTORY STOP

When the police conduct an investigatory stop of an individual that person is subjected to a seizure within the meaning of the Fourth Amendment. United States v. Kimball, 25F.3d 1. The government bears the burden of establishing that the stop was justified at its inception, that the police had a reasonable and articulable suspicion that a crime was being committed. United States v McCarthy, 77F.3d 522.

The police state in the instant case that they responded to the vicinity of Corbett and Hopkins sts. For a report of a group of men dealing drugs. The only description is they are wearing white T-shirts with hats on backwards. The police report that upon arrival they observe a group of eight male several of them matching this description. The police exit their cruiser and immediately begin pat frisking all of the male members of the group, within minutes seven more police officers arrive and begin searching the area. There is no indication in the report that any of these young men are engaged in criminal activity. The initial report of a group of individuals selling drugs provides no detail of this alleged activity, provides the scantest description and when the police arrive they do not make any observations that any of these young men are engaged in any activity consistent with street level drug dealing.

The police then take it upon themselves to open the door of Mr. Adams' automobile and search the interior far and above the permissible scope of a Terry stop.

Terry v. Ohio, 392 U.S. 1. The firearm was not in plain view and the police had no

probable cause to search the interior of that automobile. The only information that the

police had when they arrived at Corbett and Hopkins Sts. was from a dispatcher relaying

information from an unknown source. The only information was a group of males dealing

drugs wearing white T-shirts and hats on backwards. Only several of the eight men

matched that description. There is no indication that any of these men are engaged in

criminal activity nor are they acting in a suspicious manner. The information from the

dispatcher "provided no predictive information that would have allowed the officers to

test the reliability of the information. The reasonableness of official suspicion must be

measured by what the officers knew before they conducted the search". Florida v. J.L.

529 U.S. 266. In the instant case the police attempt to bolster their justification for the

search by relying on the fact that there had been a number of recent shootings in the area.

However they do not state how recent, they do not state that any violent activity had

occurred in the area that night and they do not make any observations of any of the

group of men engaged in neither criminal activity nor any suspicious behavior of any

kind.

## 11. THE STATEMENTS MADE BY MR. ADAMS ARE BOTH THE FRUITS OF THE UNLAWFUL SEARCH AND THE RESULT OF COERSION AND DURESS

The issue of improper police coercion is dependent upon the circumstances of the

case. "The Supreme Court has confined the voluntariness concept by holding that only

confessions procured by coercive official tactics should be excluded as involuntary."

USA v. Byram, No. 97-2273 (1st Circuit 05/20/1998). citing Colorado v. Connelly, 479

U.S. 157, 167. Police trickery is not automatically coercion however confessions obtained by false threats can be considered coercion. See Lynumn v. Illinois, 372 U.S. 528, 534. In the instant case the police were clearly attempting to coerce Mr. Adams into taking responsibility for the illegally seized firearm by telling him that his father, a Boston Police Officer would be held liable both professionally and criminally if he did not admit to ownership of the firearm. The police had run the license plate of the automobile and knew it was registered to Mr. Adams father and then made a conscious decision to use that information to subvert Mr. Adams' free will by threatening the criminal prosecution of his father if he did not accept responsibility for the firearm.

## REQUEST FOR AN EVIDENTIARY HEARING

The defendant Gary Adams respectfully requests an evidentiary hearing on this motion.

Gary Adams
By his attorney,

Robert M. Griffin
30 Eastbrook Rd. Rm. 301
Dedham, Ma. 02026
781-320-0099
BBO# 553893

Dated: June 3, 2005

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA                     CRIMINAL NO. 04-10342-NG

V.

GARY ADAMS

## AFFIDAVIT

1. My name is Gary Adams.

2. I am the defendant in the above captioned matter

3. On the night of August 13, 2004 at approximately 8:00 p.m. I was with a group of friends in the vicinity of Corbett St. and Hopkins St. in Dorchester.

4. I was not engaged in any criminal conduct nor were any other persons I was with.

5. The police arrived and approached us and began frisking us and asking us our names addresses and what we were doing in the area.

6. Within several minutes several more police cars arrived and began searching other people and automobiles in the vicinity.

7. I did not consent to any search.

8. At some point the police produced a firearm.

9. I was told that my father, a Boston Police officer would be held responsible for the firearm and face prosecution for same.

10. Fearing for my father's position and criminal liability I falsely took responsibility for the firearm.

11. I did not make those statements voluntarily.

_____
Gary Adams

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the defendant's motion to suppress evidence was served upon Assistant United States Attorney Sandra Bower by delivery to the Office of the United States Attorney on June 3, 2005.

Robert M. Griffin