## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Cr. No. 04-10342-NG** |
| | ) | |
| GARY ADAMS | ) | |

### SENTENCING MEMORANDUM

On December 7, 2004, Gary Adams ("the defendant") pleaded guilty to one indictment charging him with being a Felon in Possession of Ammunition in violation of 18 U.S.C. sec. 922(g)(1). This court has not yet sentenced the defendant. In a Pre-Sentence Investigation Report ("PSR") submitted to the court, the United States Probation Office concluded that, in accordance with the United States Sentencing Guidelines, the defendant's total offense level would be 21. A total offense level of 21 coupled with a criminal history category of IV would yield a presumptive guideline sentencing range of 57 to 71 months in prison. As the Court knows in United States v. Booker, 125 S. Ct. 738 (2005) the United States Supreme Court held that the Sentencing Guidelines no longer impose a mandatory burden on the federal courts.    Although district courts must consider the Guidelines as "advisory guidelines" in their sentencing decisions, courts are no longer required to impose a sentence within the mechanistic strictures of the statutory grid. Rather, courts are free to consider a wide range of factors when deriving the appropriate sentence including the history and characteristics of the individual defendant. Id. at 770.

Here, the history, characteristics, and unique circumstances of this defendant warrant a sentence of 40 months. The defendant has served approximately 33 months

in custody since his arrest on August 13, 2004.1  For reasons detailed in this sentencing memorandum, several factors render the defendant's case markedly different from the typical firearms case.  Moreover, apart from the criminal offense, the defendant's extraordinary family circumstances compel a sentence below the presumptive guideline range as described in the PSR. Under the former mandatory guideline system, the defendant's unique situation and extraordinary family circumstances would serve as a basis for a downward departure from the somewhat inflexible guideline range.  In the wake of Booker, these "humanizing" factors can emerge as critical components of the court's less restrictive sentencing analysis.

## FACTS

On August 13, 2004 the defendant and several of his friends were gathered in the area of Corbett St. and Hopkins St. in the Dorchester section of Boston. At some time around 7:30 P.M. the Boston Police receive a civilian complaint that several black males in white t-shirts and jeans were hanging around the area and engaged in selling drugs. Several police cruisers responded to the area and engaged the defendant and other individuals in an interrogation all of the males were searched and no contraband was recovered. Several of the officers then began looking into automobiles parked in the area and one of the officers recovered a Smith and Wesson .357 caliber revolver. The automobile was registered to the defendant's father Gary Adams Sr. but was used by the defendant. The automobile had been parked at that location for approximately

---

1 The defendant remains in custody at the Plymouth County House of Corrections in Plymouth, Massachusetts.

a week at the time of this incident. One of the officers at the scene then ran the plate of the automobile and it came back to the defendant's father, a Boston Police officer. The officer asked Mr. Adams if his father was a police officer and he replied affirmatively. He further inquired if there was any contraband in the vehicle when another officer informed him he had recovered the firearm. The defendant then asked the officer what consequences his father might face as a result of the recovered firearm. He was informed that the incident would be reported to a senior officer and it would be investigated through the normal channels. The Mr. Adams then immediately accepted responsibility for the firearm and asked the officers to leave his father out of this. He was placed under arrest and charged with unlawful possession of a firearm. A motion to suppress the firearm was filed and denied after a full hearing.

## DEFENDANT'S BACKGROUND

The defendant is thirty years of age and has resided in Boston for the majority of his life. He lived with an aunt in Ohio for a brief time while he was in high school. His mother and father did not live together at any point during his life and he was largely raised by his mother although he saw his father frequently. Of particular note is his assertion that his mother exposed him to marijuana use at a very early age even allowing him to smoke it with her at the age of ten. Not surprisingly he continued using marijuana which led him down the path of confrontation with the criminal justice system. He gravitated toward friends that engaged in similar behavior

and ultimately dropped out of school in the eleventh grade. After serving one year in the Suffolk County House of Correction for a firearms violation he returned to school and received his diploma.

In 1999 his mother, who had moved to Baltimore passed away. In spite of her poor judgment exposing him to illegal drug use at an early age the defendant was deeply affected by her death. After her passing the defendant went into a tailspin he began using marijuana daily, did not work and his depression left him with no positive direction. Then in 2000 he was shot by a young teenager in Dorchester in a case of mistaken identity. He was seriously wounded by the gunshot and underwent emergency surgery to repair a pierced intestine. He remained hospitalized for a week and his recovery took an extended period of time.

He has worked at a number of low paying jobs throughout his life never quite sure of which direction his life was taking. In 2001 his only child was born of his relationship with Ms. Kanika Brown a longtime companion. At this point he and Ms. Brown are planning to marry upon his eventual release from custody. Ms. Brown is employed as a flight attendant.

At the time of his arrest Mr. Adams had finally made a decision about his future and enrolled in barber school in Quincy with the eventual goal of opening his own shop. He plans to resume his training in this field upon release and pursue his goal of opening a shop. Mr. Adams has strong family support; his father, Gary Adams Sr. has been and continues to be actively involved in his life. He is an ordained Minister as well as A Boston Police Officer. He has and continues to be involved in his son's life. As noted in the PSR he has observed significant change in his son's attitude,

demeanor and outlook since his incarceration on the instant offense. He has offered his home to his son when released and has assisted in securing him promises of employment opportunities with his family members. Two of Mr. Adams' uncles are small business owners, one a masonry construction business and the other a limousine service; both have extended a willingness to employ Mr. Adams upon his release.

In addition Mr. Adams has finally come to the realization that his continued use of marijuana and his choice of friends has been a major source of his difficulties in life. Although he did not previously think he needed treatment for this he has decided that substance abuse treatment would be beneficial to him.

There is no evidence or suggestion by the Government that Mr. Adams is, or ever has been involved in any gang activity a common reason that firearms cases are prosecuted in this Court.

## **ARGUMENT**

### A.    The United States Supreme Court's Booker/Fanfan Decision Has Rendered The Sentencing Guidelines Advisory

On January 12, 2005, the United States Supreme Court issued its landmark United States v. Booker, 125 S. Ct. 138 (2005), decision. In Booker, the Supreme Court held that the principles announced in Blakely v. Washington, 124 S. Ct. 2531 (2004), apply to the United States Sentencing Guidelines. Blakely, a case interpreting the Supreme Court's earlier decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), held that within a mandatory sentencing scheme where offense levels exist, the Sixth Amendment to the United States Constitution requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Blakely</u>, 124 S. Ct. at 2537 (quoting <u>Apprendi</u>, 530 U.S. at 490). The <u>Blakely</u> Court concluded that the 'statutory maximum' for <u>*Apprendi*</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" <u>Blakely</u>, 124 S. Ct. at 2537 (emphasis in original). <u>Booker</u> applies the <u>Blakely</u> Court's reasoning to the federal sentencing guidelines and holds that within the context of a mandatory sentencing system, the Sixth Amendment requires the government to prove any sentencing enhancement factors to a jury beyond a reasonable doubt. <u>Booker</u>, 125 S.Ct. at 749-750.

In a separate majority opinion, the <u>Booker</u> Court also declared that in light of its application of <u>Blakely</u> to the federal sentencing guidelines, the statutory provisions making the guidelines mandatory upon the federal courts are unconstitutional. <u>Booker</u>, 125 S. Ct. at 756-57. Hence, the sentencing guidelines are now advisory. <u>Booker</u>, 125 S.Ct. at 757; <u>United States v. Sahlin</u>, 2005 WL 407407 (1st Cir. Feb. 22, 2005). Although courts must still consider guideline ranges, they are also free to tailor the sentence in light of other statutory concerns such as the history and circumstances of the defendant. <u>Booker</u>, 125 S. Ct. at 757 (citing 18 U.S.C. § 3553(a) (Supp. 2004)). Rather than adhere to a strict and impersonal arithmetical formula, court must now derive a sentence that is reasonable given a host of factors including the defendant's record, the nature of the crime, and the facts and circumstances germane to each case. <u>See</u> <u>Booker</u>, 125 S.

Mr. Adams' Circumstances And Background Warrant The Imposition Of A
Sentence Below the Advisory Guideline Range

As previously noted Mr. Adams was exposed to illegal substance abuse at the
tender age of ten years. His mother allowed him to use marijuana with her on
several occasions at that age. It can come as no surprise to anyone that any child
exposed to such activity during those critical years of development would
eventually wander into conflict with law enforcement. That is exactly what
happened to Mr. Adams he did poorly in school, developed a rebellious attitude
and outlook beyond what is common among young teenagers and by the time he
was eighteen found himself serving a sentence at the Suffolk County House of
Correction. Mr. Adams has failed to recognize for many years that his use of
marijuana has been a considerable problem for him largely due to the fact that he
was exposed to it by his own mother. He now realizes that he needs treatment and
support to remain drug free.

His willingness to accept responsibility for the firearm in his automobile
on the night of his arrest suggests that he does posses a sense of loyalty and
maturity one would expect of someone his age. His admission to the police that
night spared his father embarrassment as well as the stigma of being put through
an Internal Affairs investigation and possible departmental discipline.

Mr. Adams had the initiative to complete his high school diploma
requirements when he was released from the House of Correction and he has
never been involved in any organized gang activity in spite of having been

exposed to that element as well during his childhood. Mr. Adams accepts full responsibility for his actions however he asks this Court to consider the foregoing factors in fashioning his sentence. The instant offence was not committed in furtherance of any other offense, he has never been associated with any gang activity and he was exposed to illegal drug use at a very young age by someone who was charged with raising him and teaching him the fundamental morals and values of our society.

## CONCLUSION

For the foregoing reasons the Court should sentence Mr. Adams to a term of 40 months.

Respectfully Submitted,

Gary Adams

By His Attorney

Robert M. Griffin
Denner♦Pellegrino Associates
4 Longfellow Place
Boston, Ma. 02114
617-227-2800
BBO#553893

Dated May 8, 2007

## Certificate of Service

I, Robert M. Griffin, certify that on May 9, 2007, I served a copy of the within Sentencing Memorandum upon Assistant United States Attorney by electronic filing at One Courthouse Way, Suite 900, Boston, Massachusetts

Robert M. Griffin